JUDGE CASTEL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

11 CIV 7155

-------------------------------------------------------------

R SQUARED GLOBAL, INC.,

                             Plaintiff,

        -against-

SERENDIPITY 3, INC.,

                          Defendant.

-------------------------------------------------------------

Civil Action No.



OCT 12 2011

U.S.D.C. S.D. N.Y.
CASHIERS

## DEFENDANT'S NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441, 1446 and 1447 and Local Rule 81.1, Defendant

Serendipity 3, Inc. ("Defendant"), hereby gives notice of removal of the case styled as *R Squared*

*Global, Inc. v. Serendipity 3, Inc.*, Index No. 652776/2011, in the Supreme Court of the State of

New York, County of New York, to this Court. As grounds, Defendant states:

        1.      On or about October 11, 2011, this action was commenced by Plaintiff R Squared

Global, Inc. ("Plaintiff") against Defendant in the New York State Supreme Court, County of

New York, by the filing of a summons and complaint, copies of which are attached hereto as

Exhibit A.  Defendant's counsel was provided with a copy of the summons and complaint the

same day.

        2.      The instant civil action arises out of a dispute over the nature and extent of

Plaintiff's and Defendant's federal intellectual property rights.

3.     Plaintiff's complaint asserts a claim for breach of contract and related claims arising out of the provisions of a License Agreement entered into by the parties, dated September 14, 2005.  Under the License Agreement, Defendant licensed to Plaintiff specified uses of its federally protected intellectual property.  The License Agreement contains both copyright and trademark licenses, the nature and scope of which are governed by the Copyright Act of 1976, as amended, 17 U.S.C. §101 et seq. (the "Copyright Act") and the Lanham Trademark Act of 1946, as amended, 15 U.S.C. § 1051 et seq. (the "Lanham Act"), respectively.

4.     On October 3, 2011, Defendant terminated the License Agreement under its terms after Plaintiff repeatedly violated conditions of the agreement's copyright and trademark licenses, thereby infringing Defendant's copyrights and trademarks.  Plaintiff's complaint is premised on its allegations that it did not exceed the scope of the agreement's copyright and trademark licenses and that Defendant's termination of the agreement was improper.

5.     This action is one over which this Court has original jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), and may be removed to this Court by Defendant pursuant to 28 U.S.C. § 1441, as it is a civil dispute which requires the resolution of substantial federal questions, including, but not limited to, interpretation of relevant provisions of the Copyright Act and the Lanham Act.

6.     This Notice is being filed within thirty days of Defendant's receipt of Plaintiff's complaint.

7.     A copy of all process, pleadings, and orders filed in the New York State Supreme Court, County of New York, is attached to this Notice as Exhibit A.

WHEREFORE, Defendant prays that the above action now pending against it in the Supreme Court of the State of New York, County of New York, be removed to this Court.

Dated: New York, New York
       October 12, 2011

COWAN, LIEBOWITZ & LATMAN, P.C.

By: _____
     Kieran G. Doyle (kgd@cll.com)

1133 Avenue of the Americas
New York, NY  10036-6799
(212) 790-9200
Attorneys for Defendant Serendipity 3, Inc.

3

16422/003/1271368.1

Aldine ™ Enviro·Tab ™

Exhibit A

FILED: NEW YORK COUNTY CLERK - PENDING

NYSCEF DOC. NO. 1

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 10/11/2011

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------X

R SQUARED GLOBAL, INC.,

                                        Plaintiff,

                    -against-

SERENDIPITY 3, INC.,

                                        Defendant.

---------------------------------------------------------------X

Index No. 652776/2011

**SUMMONS**
Plaintiff designates
New York County as
the place of trial

The basis of the venue
is Plaintiff's address:
200 Central Park South
New York, New York, 10019

Filed: October 11, 2011

**TO THE ABOVE NAMED DEFENDANT:**

        **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to
serve a copy of your answer, or, if the complaint is not served with this summons, to
serve a notice of appearance on the plaintiff's attorney within twenty (20) days after the
service of this summons, exclusive of the day of service (or within thirty (30) days after
the service is complete if this summons is not personally delivered to you within the
State of New York); and in case of your failure to appear or answer, judgment will be
taken against you by default for the relief demanded in the complaint.

Dated:        East Meadow, New York
              October 11, 2011

                              CERTILMAN BALIN ADLER & HYMAN, LLP

                        By: _____
                              Paul B. Sweeney, Esq.
                              Attorneys for Plaintiff
                              90 Merrick Avenue, 9th Floor
                              East Meadow, New York 11554
                              (516) 296-7000

**<u>Defendant's Address:</u>**
Serendipity 3, Inc.
225 East 60th Street
New York, New York 10022

Kieran G. Doyle, Esq.
Cowan, Liebowitz & Latman, P.C.
*Attorneys for Defendant*
1133 Avenue of the Americas
New York, New York 10036-0671
(212) 790-9200

2411388.1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------X    Index No. 652776/2011

R SQUARED GLOBAL, INC.,

Plaintiff,

-against-                                                      **VERIFIED COMPLAINT**

SERENDIPITY 3, INC.,

Defendant.

------------------------------------------------------------X

Plaintiff, R Squared Global, Inc. as and for its Verified Complaint against the

defendant Serendipity 3, Inc., respectfully alleges as follows:

## SUMMARY OF THE ACTION

1.      Defendant Serendipity owns and operates a restaurant in New

York City under the name "Serendipity 3."  In September 2005, Plaintiff R Squared and

Serendipity entered into a license agreement ("License Agreement")[1] whereby Plaintiff

paid, and has continued to pay, Serendipity substantial licensing fees in exchange for

the exclusive right to develop and operate additional Serendipity restaurants

throughout the world using the Serendipity trademarks and other intellectual property,

and to sell merchandise utilizing Serendipity intellectual property on a non-exclusive

basis.

2.      This action concerns Serendipity's ongoing efforts to deprive R

Squared's of its bargained for rights under the License Agreement to open additional

---

[1] The License Agreement was amended by letter agreements dated May 24, 2007 and November 8, 2010. The
License Agreement and the 2 letter agreements are collectively referred to herein as the "License
Agreement."

2412021

restaurants, long after R Squared fully paid for such rights, and Serendipity's wrongful attempt to terminate the License Agreement. This action seeks, *inter alia,* (1) declaratory judgment that Serendipity's purported termination of the License Agreement is improper, unlawful, legally defective, and null and void; (2) a declaratory judgment that Plaintiff R Squared is entitled under the License Agreement to open additional restaurants that Serendipity must approve unless R Squared fails to satisfy one or more of the criteria expressly set forth in the License Agreement; and (3) damages for Serendipity's breach of the License Agreement by unreasonably refusing to approve new locations in Long Branch, New Jersey and South Beach, Miami Beach, Florida.

## PARTIES

3.      Plaintiff R Squared Global, Inc. ("R Squared"), is a Nevada corporation with offices at 200 Central Park South, New York, New York, 10019.

4.      Defendant Serendipity 3, Inc. ("Serendipity"), is a New York corporation, with a principal place of business at 225 East 60th Street, New York, New York 10022. Defendant Serendipity owns and operates a restaurant in New York City under the name "Serendipity 3." Serendipity is the licensor of the Licensing Agreement with R Squared. Serendipity's President is Stephen Bruce.

## BACKGROUND

5.      R Squared was formed by Rowen Seibel for the sole and express purpose of entering into the License Agreement with Serendipity and developing the business contemplated by the License Agreement, *i.e.* opening and operating new Serendipity restaurants throughout the world.

2

6.     R Squared owns and operates a Serendipity restaurant in Las Vegas, Nevada, that was established pursuant to the License Agreement, and is the sub-licensor of two additional restaurants established pursuant to certain sublicense agreements; one in Boca Raton, Florida, the second in Georgetown, Washington D.C. The operation and development of the business contemplated by the License Agreement is R Squared's sole business.

## THE LICENSE AGREEMENT

7.     On September 14, 2005, R Squared and Serendipity entered into the License Agreement to become the exclusive licensee of Serendipity's trademarks and other intellectual property.  The License Agreement is annexed hereto as Exhibit A, and its provisions expressly incorporated herein.

8.     The License Agreement provided for a 10-year "Initial Term" that could be extended by R Squared for two 5-year terms at R Squared's election, so long as R Squared was not in Material Breach of the Agreement.   (Sections 11.1, 11.2 of the License Agreement)

9.     The License Agreement purports to be a licensing arrangement. Serendipity represented to R Squared that the Agreement was not intended to be a franchise agreement, and was not intended to be subject to the franchise laws of New York State or any other state.   Upon information and belief, Serendipity has not registered a franchise with the New York Department of Law, nor has it registered an offering prospectus.

2408494.1

10.    Based on Serendipity's conduct and unfounded interpretation of the License Agreement, it appears that Serendipity has and always had a marketing plan that it concealed from R Squared that limits the number of new locations that will be opened. Serendipity has also repeatedly attempted to regulate virtually all aspects of R Squared's activities and exert undue control over the operations of R Squared's activities under the License Agreement. Serendipity's actions reveal that, if its conduct is permitted by the License Agreement, then the License Agreement is, in fact, a franchise agreement subject to New York's franchise laws, laws which Serendipity has not complied with.

11.    Under the License Agreement, in exchange for the licensing rights R Squared was required to make a one-time upfront royalty payment of $150,000.00 to Serendipity upon execution of the License Agreement, and an additional $350,000.00 in royalty payments over the first two years of the License Agreement, $200,000 of which would be applied against certain future royalties. (Schedule A-1, Section 5.1(a) of the License Agreement.) R Squared was further required to pay royalties to Serendipity based upon the annual gross receipts of all the restaurants opened pursuant to the License Agreement. (Section 2.4; Schedule 2.4 of the License Agreement.) The License Agreement further provided for a minimum royalty payment that was due regardless of the annual gross receipts at the restaurants opened pursuant to the License Agreement. (Schedule A-1, Section 6.1 of the License Agreement.) The minimum royalty payments were set as follows: July 1, 2009 – June 30, 2010 ($270,000.00); July 1, 2010 – June 20, 2011 ($300,000.00); July 1, 2011 – June 30, 2012 ($330,000.00); July 1, 2012

4

– June 30, 2013 ($360,000.00); July 1, 2013 – June 30, 2018 ($390,000.00); and after July 1, 2018 the minimum royalty would increase in accordance with the consumer price index. (Schedule A-1, Section 6.1 of the License Agreement.)

12.     R Squared has made all royalty payments contemplated by the License Agreement.

13.     In exchange for these substantial royalty payments, Serendipity granted to R Squared the exclusive license to open and operate restaurants anywhere in the world, except New York and Nassau County, utilizing Serendipity's trademarks and other intellectual property, and to sell Serendipity merchandise.  (Sections 1 and 2 of the License Agreement.)

14.     Due to the substantial minimum royalty payment provisions requiring increasing royalty payments to Serendipity regardless of R Squared's revenues earned under the License Agreement, it is in R Squared's interest to pursue opportunities to develop, open or operate new restaurants.

15.     Because of the substantial minimum royalty payments, the License Agreement becomes profitable to R Squared only when it is able to open additional new restaurants.

16.     The License Agreement expressly contemplated that R Squared would open a new restaurant in Las Vegas, Nevada.  (Page 1; Schedule A-1 to the License Agreement.)

17.     The License Agreement further provided that R Squared could open and operate other restaurants in other locations using the Serendipity intellectual

5

property ("Additional Locations") provided that (1) there is no conflicting "third party use" of the Serendipity trademarks, and (2) R Squared is not in "material breach" of the License Agreement.  (Section 3.2 of the License Agreement.)  Specifically, Section 3.2 states:

> In addition to the rights granted to R Squared to utilize the license granted in Section 2.1 to develop, open and operate the Cosmopolitan Restaurant, R Squared will have the exclusive rights to use the Intellectual Property to develop, open and operate other Restaurants and sell Licensed Merchandise in Merchandising Outlets at other Locations throughout the world but not including the Restricted Area (each, an "Additional Location" and collectively, "Additional Locations") provided that (i) Serendipity is able to confirm through a third party searching service report that there is no conflicting third party use and has provided its approval with respect to any such Additional Location, which such approvals shall not be unreasonably withheld or delayed and (ii) R Squared has complied with the Additional Location Requirements set forth on Schedule 3.2 attached hereto and made a part hereof.  Further, in order for R Squared to preserve its right to develop, open and operate each of the Restaurants at Additional Locations in the future, then, in addition to the requirements set forth above in this Section 3.2, R Squared must be in compliance with the provisions set forth in each of Section 5 of this Agreement and Section 6.1 and Section 6.2 of Schedule A-1 attached hereto and made a part hereof.

18.    By its terms, Section 3.2(i) limited Serendipity's right to withhold approval of an Additional Location only if it is unable to confirm "that there is no conflicting third party use."  Upon obtaining such confirmation, Serendipity would provide its approval to R Squared, and such approval could not be "unreasonably withheld or delayed."

2408494.1

19.  Section 3.2(ii) requires that R Squared be in compliance with Schedule 3.2 in order to open an Additional Location.  Schedule 3.2, titled "Additional Location Requirements", provides:

> In order to exercise the rights granted to R Squared under Section 3.2 of the Agreement, any time that R Squared desires to exercise such rights and develop, open and operate a Restaurant at an Additional Location, then, in addition to the other requirements set forth in Section 3.1 of the Agreement, R Squared must be in compliance with all of the following conditions: (1). R Squared is not in Material Breach of the Agreement; and (2). R Squared has complied with Section 6.2 of Schedule A-1 ....

20.  Separately, R Squared was granted the right to sublicense its rights under the License Agreement to third parties to open and operate new restaurants. (Section 2.5 of the License Agreement.)  If R Squared elects to sublicense its rights to a third party:

> "R Squared may only sublicense its rights under this Agreement with the express prior written consent of Serendipity which will not be unreasonably withheld to a qualified and legitimate third-party engaged in the food service industry provided that such third party is of good reputation and financial capability and provided that the assignee agrees to abide by all of the provisions of this Agreement and that R Squared agrees to be responsible for the obligations pursuant to the terms of this Agreement of the assignee." (Section 2.5 of the License Agreement.)

21.  Other than the requirement that the sublicensee be a "qualified and legitimate third party engaged in the food service industry", is "of good reputation and financial capability", and "agrees to abide by" the License Agreement, the License

2408494.1

Agreement does not provide any other basis on which Serendipity is permitted to withhold its consent to R Squared sublicensing its rights to a third party.

22.     Under Section 2.5, Serendipity is required to approve or disapprove of any proposed sublicense arrangement within 30 days after R Squared requests approval. The License Agreement does not require that R Squared present the actual proposed sublicense agreement to Serendipity for approval, or that Serendipity is entitled to approve or disapprove of the specific terms contained in the sublicense. The License Agreement only requires that "R Squared agrees to be responsible for the obligations pursuant to the terms of this Agreement of the assignee."

23.     Contrary to the express terms of the License Agreement, Serendipity claims to have the absolute right to reject any proposed Additional Location for any reason whatsoever, including whether in Serendipity's purported opinion the Additional Location: would "benefit the brand"; would be the "right next step" for the brand; is the "proper location to debut the Serendipity brand"; is a "prime spot"; "creates a stand-alone impression"; is "just one eatery among others"; has "room to grow"; is in space that "is too cramped"; has "space for private parties"; or has a "cookie cutter appearance of the various storefronts."

24.     Serendipity claims without basis to possess the right to disapprove of the general territory of the Additional Location for any reason whatsoever. Serendipity further claims without basis to disapprove of the specific address of any proposed Additional Location for any reason whatsoever.

8

2408494.1

25. Serendipity claims such rights despite any basis for such rights in the License Agreement.

## R SQUARED OPENS THE LAS VEGAS RESTAURANT

26. Since entering into the License Agreement, R Squared has successfully opened three restaurants.

27. As contemplated by the License Agreement, R Squared opened a restaurant in Las Vegas, Nevada in April 2009.

28. The License Agreement originally contemplated that the Las Vegas restaurant would be located "in the Cosmopolitan Resort & Casino located on Las Vegas Boulevard and Harmon Avenue" in Las Vegas, Nevada. (Schedule A-1, Section 1.1 of the License Agreement.)

29. Due to difficulties at the Cosmopolitan location, R Squared developed the Las Vegas restaurant at Caesars Palace. Serendipity did not object to this location. The Las Vegas restaurant opened in April 2009.

## THE BOCA RATON RESTAURANT IS OPENED

30. In or around June 2007, R Squared entered into a sublicense arrangement with a third party, BRE/Baton Operating Lessee, Inc. ("BRE"), to open a restaurant in Boca Raton, Florida.

31. Pursuant to Section 2.5 of the License Agreement, R Squared provided information to Serendipity showing that BRE satisfied all the requirements of a sublicensee under Section 2.5: BRE was a legitimate third-party engaged in the food service industry and was of good reputation and financial capability; BRE agreed to

9

abide by the terms of the License Agreement; and R Squared agreed to be responsible for the sublicensee's adherence to the obligations of the License Agreement.

32.    Initially, Mr. Bruce of Serendipity expressed "concern" that the Boca Raton location "will not receive sufficient traffic since it is located on the grounds of a private club and hotel" and "will develop in such a way that the character of the brand is distorted by the need to cater to the demands of an established club/hotel/resort."

33.    Serendipity confirmed that it had conducted a third party search and there was no conflicting use in Boca Raton, and eventually withdrew its objections to the Boca Raton site.  R Squared was in compliance with all terms of the License Agreement.  The Additional Location was thereby approved by Serendipity pursuant to Section 2.5 of the License Agreement.

34.    The Boca Raton restaurant opened in November 2008.

### SERENDIPITY UNREASONABLY AND WITHOUT RIGHT OR BASIS REJECTS THE LONG BRANCH, NEW JERSEY LOCATION

35.    In 2008, R Squared began negotiations to sublicense its rights to West Paces Hotel Group in connection with opening a Serendipity restaurant in Long Branch, New Jersey at the luxury hotel Ocean Place Resort & Spa.

36.    West Paces Hotel Group operates numerous high end luxury hotels throughout the world.

10

2408494.1

37.    R Squared negotiated a sublicense with West Paces Hotel Group and, despite not being required to do so under the License Agreement, presented the proposed sublicense to Serendipity pursuant to Section 2.5 of the License Agreement.

38.    Pursuant to Section 2.5 of the License Agreement, R Squared provided information to Serendipity showing the West Paces Hotel Group satisfied all the requirements of a sublicensee under Section 2.5: West Paces was a legitimate third-party engaged in the food service industry and was of good reputation and financial capability; West Paces agreed to abide by the terms of the License Agreement; and R Squared agreed to be responsible for the sublicensee adherence to the obligations of the License Agreement.

39.    R Squared complied with Section 3.2 of the License Agreement for Additional Locations.   R Squared was not in material breach of the License Agreement.

40.    Serendipity claimed the right to both approve of the precise location of the proposed Additional Location and approve the terms of the sublicense agreement.

41.    Serendipity did not, as it was required to do under Section 2.5 of the License Agreement, approve or disapprove of the sublicense or sublicensee within 30 days.  Serendipity did not inform R Squared whether they had conducted a third party search for conflicting uses.  Instead, without basis, Serendipity disapproved of the Long Branch in May 2009 stating that their "familiarity with the Ocean Place in Long Branch, New Jersey and a review of several photographs attached hereto depicting the overall look and feel of the Ocean Place's outdoor area leads us to the conclusion that

11

this is not the right location for a Serendipity establishment. Nothing in the agreement gave us greater confidence that opening an Additional Location at the Ocean Place in Long Branch, New Jersey would benefit the brand or otherwise be the right 'next step' at this time."

42. The purported bases for Serendipity's disapproval of the Long Branch location were unreasonable and contrary to the terms of the License Agreement.

43. Serendipity has no knowledge or experience with Long Branch, New Jersey restaurant market.

44. The grounds stated by Serendipity for refusing to approve Long Branch reveals that it has a pre-existing marketing plan that it did not disclose to R Squared prior to entering into the License Agreement and still has not revealed to R Squared.

45. Serendipity did not have the right to withhold approval of the Long Branch location in light of R Squared's compliance with Sections 2.5 and 3.2 of the License Agreement.

46. The projected lost income to R Squared from the Long Branch restaurant is $675,000.00 over the next 15 years.

## THE GEORGETOWN RESTAURANT IS OPENED

47. On or about June 3, 2010, R Squared requested that Serendipity approve its sublicense with Dessert Concepts, Inc. to open a restaurant in Georgetown,

12

Washington D.C.  Under Section 2.5 of the License Agreement, Serendipity had 30 days to approve the sublicense.

48.    On July 1, 2010, Serendipity informed R Squared that it "values the opportunity to see the brand expanded through a relationship with Dessert Concepts and Mr. Charles Britton Swan", "would be favorably disposed to seeing Mr. Swan spearheaded a new Serendipity Restaurant", and "would be favorably disposed to this location and would proceed with a trademark search of the area."  Nevertheless, Serendipity stated that it was not required to respond to R Squared's request for sublicense approval because R Squared was not in compliance with the License Agreement.  Serendipity further stated that to the extent it is required to respond to R Squared's request, "Serendipity does not grant the consent requested."

49.    Serendipity incorrectly claimed that R Squared was not in compliance with the License Agreement.

50.    Serendipity also demanded to review R Squared's sublicense with its Georgetown sublicensee.  There is no provision in the License Agreement that requires R Squared to provide Serendipity with a copy of its proposed sublicense agreement.  With time running short, and fearful of losing the Georgetown location, R Squared agreed to provide Serendipity a redacted copy of the proposed sublicense agreement.

51.    There is also no provision that allows Serendipity to impose alterations to the sublicense agreement.  Nevertheless, upon receiving the proposed Georgetown sublicense agreement, Serendipity sought to impose onerous new terms

13

onto the sublicense agreement and stated that unless its new terms were incorporated Serendipity would not approve the Georgetown sublicense location.

52.     After significant delays, and with its sublicensee for the Georgetown location preparing to terminate its relationship against R Squared and commence litigation against both R Squared and Serendipity, R Squared and Serendipity reached an agreement by which the Georgetown sublicense was approved and the parties' royalty dispute was resolved via an amendment to the parties License Agreement by which Serendipity agreed that R Squared was not in breach of the License Agreement.

53.     The Georgetown restaurant opened in May 2011.

### SERENDIPITY UNREASONABLY AND WITHOUT RIGHT OR BASIS REJECTS THE SOUTH BEACH, MIAMI, FLORIDA LOCATION

54.     In November 2010, R Squared informed Serendipity that it was close to finalizing a deal to enter into a sublicense for a new restaurant at 1102 Lincoln Road in South Beach, Miami Beach, Florida.

55.     In January 2011, R Squared again informed Serendipity that it was finalizing its deal to enter into a sublicense to open a restaurant at 1102 Lincoln Road in South Beach, Miami Beach, Florida, and invited Serendipity to visit the proposed location.

56.     In response to R Squared providing the specifications of the new restaurant, Serendipity's representative responded in January 2011 "sounds great."

2408494.1

However, at no time over the next 8 months did Serendipity visit the new location. At no time over the next 8 months did Serendipity object to the proposed new location.

57.     In July, 2011, R Squared provided Serendipity with all information required under Section 2.5 of the License Agreement for approval of a sublicensee, including the background, experience and financial capabilities of the sublicensee, Tricia Johnson. Ms. Johnson and her husband are experienced restaurant operators with extensive experience in the food service industry. They are the founders and managing partners in Sushi Samba and Sugarcane restaurants in South Beach, with 6-7 well-known branded restaurants around the country.

58.     Despite being advised as early as November 2010 of the 1102 Lincoln Road, South Beach location, and despite failing to voice any objections to that location, Serendipity improperly interpreted R Squared's July 22 letter to be a request for approval of an Additional Location under Section 3.2 of the License Agreement.

59.     On August 15, 2011, the New York Post reported in a story planted by Mr. Bruce that Mr. Bruce "was in South Beach scouting locations for Serendipity 3 in Miami."

60.     On or about August 17, 2011, Mr. Bruce of Serendipity finally visited the proposed site. After visiting the site, Mr. Bruce requested design drawings for the interior of the restaurant.

61.     On August 19, 2011, Serendipity stated that it did not approve of the 1102 Lincoln Road location.

62.   The stated reasons for Serendipity's refusal to approve the location are as follows:

> Having visited the location, Mr. Bruce was disappointed. He believes it is not a proper location to debut the Serendipity 3 brand in South Beach and that the location would be a disservice to the brand. Unlike the Georgetown Location and the Las Vegas Location, the 1102 Lincoln Road location is not in a prime spot. Nor does it convey the exclusivity and high-end feel that comes with the affiliation with the Bocas Raton Resort and Club. The 1102 Lincoln Road location is a tail-end slice of a building and does not create a stand-alone impression. This is exacerbated by the cookie-cutter appearance of the various storefronts in the 1102 Lincoln Road building. Moreover, the presence of an adjoining restaurant with side-by-side sidewalk dining would result in a perception of Serendipity 3 as just one eatery among others. Finally, Mr. Bruce feels that the space is too cramped, and the fact that there is only one floor leaves no room to grow. For example, there is no space for private parties, one of the many stated virtues of the Georgetown Location. Essentially, the Additional Location at 1102 Lincoln Road would not make a distinctive first-rate impression consistent with the Serendipity 3 brand.

63.   Serendipity then suggested that R Squared look at space "at 845 Lincoln Road" which Serendipity claimed "appeared to be available and was a more appealing location which would be more consistent with the brand." In other words, Serendipity did not object to the South Beach location, or even a Lincoln Road location, but rather the specific address of the proposed location.

64.   To the extent Serendipity had any right to object to the South Beach location, by August 19, 2011 it had waived any such right and unreasonably delayed its approval of the South Beach location in violation of Section 3.2 of the License Agreement.

16

2408494.1

65.     To the extent Serendipity had any right to object to the South Beach location, all of Serendipity's stated reasons for refusing to approve the location were unreasonable and without any basis.

66.     Serendipity has no knowledge or experience with South Beach Florida and the South Beach restaurant market.

67.     Serendipity unreasonably claims that the Lincoln Road location is not "a prime spot." In fact, the proposed restaurant would be located on the hottest block in perhaps the hottest area of the country. Lincoln Road is the premier strip in South Beach and the 1102 location is surrounded by high end restaurants and upscale stores. The main, state of the art, parking facility for the area is nearby. A brand new ultra-modern theatre is a few doors away. There is substantial foot traffic in the area of the restaurant. The proposed location, in fact, could not have been better or a more prime spot.

68.     Serendipity unreasonably claims that the 1102 Lincoln Road location does not convey "exclusivity and high-end feel." The proposed location conveys "exclusivity and high-end feel" and is certainly more high-end than the flagship Serendipity restaurant in New York.

69.     Serendipity unreasonably complains that the location "does not create a stand-alone impression." In fact, not one of the other locations, including the New York location whose "brand" Serendipity claims to be protecting, are stand alones, nor do they create the impression of a stand alone.

17

2408494.1

70.     Serendipity unreasonably complains that the location is "one eatery among others." None of the other Serendipity locations is isolated or distant from other eateries.

71.     Serendipity unreasonably complains that "the fact that there is only one floor leaves no room to grow." There is no room to grow in the New York flagship location.

72.     Serendipity unreasonably complains that the space is "cramped." The location has 3,300 square feet in the interior, with room for up to 100 seats outside. This is more seating capacity than exists in either New York or Georgetown. When Serendipity was first told about the size of the new location, it responded "sounds great."

73.     The South Beach location could not be better, but is being rejected by Serendipity as part of its ongoing efforts to deprive R Squared of the benefits of the parties' bargain contained in the License Agreement, and seeks to control R Squared as a franchisor controls a franchisee.

74.     Now that R Squared has successfully developed the Serendipity brand through the new and successful locations, Serendipity is looking to obstruct R Squared's efforts to open additional restaurant and terminate the License Agreement so that Serendipity may enter into a more financially lucrative arrangement with a new licensee or directly with new sub-licensees.

75.     Without any reasonable basis, Serendipity's owner, Mr. Bruce, is upset that he was not consulted with earlier by R Squared when selecting the South

18

Beach location - something that R Squared has no obligation to do under the License Agreement, but did anyway when it first notified Mr. Bruce of the location in November 2010. Because Mr. Bruce's desire to exert undue control over R Squared, Serendipity has taken the baseless position that Serendipity may disapprove of Additional Locations for reasons beyond those set forth in Section 3.2 of the License Agreement, and further has taken the unreasonable and baseless position that it can reject R Squared's proposed Additional Locations for any reason whatsoever and stop R Squared from exercising its bargained for and paid for right to open new restaurants under the License Agreement.

76.    Serendipity did not claim the right to deny approval of the South Beach location on the grounds that R Squared was in breach of the License Agreement. To the contrary, Serendipity claimed that "we are unable to determine whether or not [R Squared] is in breach of paragraph 2.3 of the agreement." Section 2.3 concerns R Squared sale of licensed merchandise.

77.    On August 30, 2011, R Squared formally requested under Section 2.5 of the License Agreement that Serendipity approve its request to sublicense its rights to Ms. Johnson for the South Beach restaurant. Although it was not required to do so, R Squared provided Serendipity with a copy of its proposed sublicensee agreement for South Beach.

78.    On September 7, 2011, the Miami New Times reported that it had confirmed with Serendipity's headquarters that "the plans are in the works to open on Lincoln Road, but we were told the ink was not dry on the lease agreement." This press

19

release by Serendipity violated Section 13.15 of the License Agreement, which requires R Squared's approval of any publicity regarding new locations.

79.   On September 26, 2011, Serendipity rejected R Squared's request to approve the sublicense arrangement with Ms. Johnson on the grounds that it had already disapproved the South Beach 1102 Lincoln Road location, and therefore R Squared's request to approve Ms. Johnson was "improper and moot."

80.   The projected lost income to R Squared from the South Beach restaurant over the next 14 years is approximately $15 million.

81.   Serendipity's confirmation of the opening of the South Beach restaurant with the Miami press _after_ it formally rejected R Squared's request for approval of the South Beach location reveals that Serendipity intends to misappropriate the South Beach opportunity.  Upon information and belief Mr. Bruce has spoken with no fewer than 10 real estate brokers about leasing space in South Beach.

82.   Upon information and belief, Serendipity's purported termination of the License Agreement with R Squared was undertaken so that it may negotiate directly with Ms. Johnson to open the South Beach and other restaurants in the future.

## THE PURPORTED TERMINATION OF THE LICENSE AGREEMENT

83.   By letter dated October 3, 2011 Serendipity, through its counsel, purported to terminate the License Agreement pursuant to paragraph 12 of the License Agreement.

84.   Serendipity alleged that R Squared repeatedly and continues to violate sections 2.3, 10.2 and 10.6 of the License Agreement through the sale of

20

merchandise bearing Serendipity 3's Intellectual Property without prior written approval, among other things.

85.    In the October 3 letter, Serendipity identified 15 specific items of merchandise, as well as generally referring to unspecified T-shirts being sold in Boca Raton, that it claimed it had not approved for sale, but were currently being sold at one of the Las Vegas, Boca Raton or Georgetown locations. Serendipity attached undated photographs of the alleged merchandise.

86.    Section 2.3 of the License Agreement provides in relevant part:

[I]f R Squared can source Licensed Merchandise previously approved, sourced or manufactured by Serendipity from a third party at less than Serendipity's cost, R Squared: (a) may buy such Licensed Merchandise from such third party provided such Licensed merchandise is of equal or greater quality to that previously approved, sourced or manufactured by Serendipity and (b) will sell Serendipity such Licensed Merchandise at R Squared's cost plus ten (10) percent.

87.    R Squared is not currently in violation of any provision of the License Agreement, including those provisions concerning the sale of licensed merchandise.

88.    All of the merchandise identified by Serendipity in the October 3, 2011 letter had been previously submitted to Serendipity for approval. None of the merchandise had been disapproved by Serendipity.

89.    Some of the merchandise identified by Serendipity was not being offered for sale on or around October 3, 2011.

21

2408494.1

90.     In order to terminate the License Agreement, Serendipity must provide written notice of the alleged material breaches of the Agreement and upon receipt of such notice, R Squared is entitled to cure the alleged breaches within 90 days, and if such breaches cannot be cured in 90 days an additional 60 days to cure the breaches.

91.     Section 12(c) of the License Agreement states:

Cure Period. This Agreement shall automatically terminate ninety (90) days after written notice by Serendipity to R Squared of any breach or default by R Squared in any of its representations in this Agreement or the performance of any of its obligations under this Agreement (other than those set forth in subparagraph (b) hereof) unless such breach or default is cured within such ninety (90) day period; provided that, if the nature of the breach or default is such that it cannot reasonably be cured within such ninety (90) day period, then R Squared shall have an additional sixty (60) days to cure the same if R Squared commences the cure within the ninety (90) day period and diligently pursues same to completion.

92.     Serendipity represented to R Squared as recently as August 19, 2011 that it was not aware of any merchandise being sold in breach of the License Agreement.

93.     Serendipity did not provide notice of the alleged breaches until October 3, 2011. As a result, R Squared is entitled to cure the alleged breaches at least to and through January 1, 2012.

94.     Serendipity's notice of termination purported to require R Squared to begin complying with the termination of the Agreement by October 19, 2011.

22

95.     Serendipity's notice of termination was issued in bad faith and issued so that upon R Squared's termination Serendipity could misappropriate the South Beach opportunity, as well as other past and future opportunities, and as leverage to cover up their bad faith, wrongful and unreasonable refusal to approve the South Beach location.

96.     While R Squared is not in breach of the Agreement and denies that any of the identified merchandise had not been previously approved, R Squared has cured any and all of the purported breaches by having all of the identified merchandise removed from being offered for sale in Las Vegas, Boca Raton and/or Georgetown.

97.     Serendipity has not withdrawn its purported notice of termination of the License Agreement.

### AS AND FOR A FIRST CAUSE OF ACTION
### AGAINST DEFENDANT SERENDIPITY
#### (Declaratory Judgment)

98.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraph 1 through 97 above as if fully set forth at length herein.

99.     By letter dated October 3, 2011 Serendipity through its counsel purported to terminate the License Agreement pursuant to paragraph 12 of the License Agreement.  No previous written notice was provided to R Squared identifying the alleged breaches identified by the October 3 letter.

100.    The October 3 letter alleges that R Squared repeatedly and continues to violate paragraphs 2.3, 10.2 and 10.6 of the License Agreement through the

2408494.1

sale of merchandise bearing Serendipity 3's Intellectual Property without prior written approval, among other things.

101.   R Squared is not currently in violation of any provision of the License Agreement.   Furthermore, Serendipity was provided advance notice of the merchandise sales at issue and either approved said sales or waived any objection to the same.

102.   Under the License Agreement, the Agreement automatically terminates after written notice by Serendipity is provided to R Squared, unless such duly identified breaches are cured within 90 days of the date of the written notice.

103.   If such identified breaches "cannot reasonably be cured within such ninety (90) day period, then R Squared shall have an additional sixty (60) days to cure" the alleged breaches.

104.   Serendipity's October 3 notice purported to terminate the License Agreement immediately without providing R Squared the required 90 days to cure the alleged breaches.

105.   Serendipity's purported notice of termination is in bad faith and consistent with its pattern of attempting to overreach, disrupt and unlawfully interfere with R Squared's ability to conduct its business affairs.

106.   Serendipity's October 3 notice is invalid and improper by purporting to terminate the License Agreement without providing R Squared with the required cure period.

24

107.    The earliest date on which the License Agreement may be deemed terminated is January 1, 2012, and only if it is determined that the items identified in the October 3 letter were being offered for sale in violation of the License Agreement and if R Squared does not cure such violations by January 1, 2012.

108.    Any and all of the alleged breaches of the License Agreement have been cured by R Squared.

109.    A justiciable controversy therefore exists between the parties with respect to whether R Squared is in violation of the License Agreement and the validity of the purported termination letter.

110.    R Squared has no adequate remedy at law.

111.    Based on the foregoing, plaintiff R Squared is entitled to declaratory judgment that Serendipity's letter dated October 3, 2011 purportedly terminating the License Agreement and the related letter agreements is improper, unlawful, legally defective, null and void, and that Serendipity waived its right to argue, and is estopped from arguing that R Squared is in violation of Paragraphs 2.3, 10.2 and 10.6 of the License Agreement, that R Squared is not in violation of Paragraphs 2.3, 10.2 and 10.6 of the License Agreement and that Serendipity be enjoined and restrained from taking steps to terminate the License Agreement and the related letter agreements.

## AS AND FOR A SECOND CAUSE OF ACTION
## AGAINST DEFENDANT SERENDIPITY
### (Declaratory Judgment)

112.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraph 1 through 111 above as if fully set forth at length herein.

113.   The License Agreement is a binding and enforceable contract.

114.   Section 3.2 of the License Agreement permits Serendipity to deny approval of R Squared developing, opening or operating a restaurant at an Additional Location only if there is a "conflicting third party use" at the proposed location; if R Squared is in "Material Breach" of the License Agreement; or, if R Squared has not complied with Section 6.2 of Schedule A-1 of the License Agreement concerning R Squared's obligation to pay royalties to Serendipity.

115.   Serendipity may not deny its approval of an Additional Location for any reason other than those specifically set forth in Section 3.2.

116.   Serendipity has repeatedly refused to approve Additional Locations proposed by R Squared for reasons that are not provided for in Section 3.2 or any other part of the License Agreement.

117.   Serendipity is presently refusing to approve of the South Beach location for new restaurant for reasons not provided for in Section 3.2.

118.   Even if Serendipity may disapprove locations for reasons not specifically set forth in Section 3.2, Serendipity may not withhold its approval unreasonably.

26

2408494.1

119.   All of the purported reasons for disapproving the 1102 Lincoln Road, South Beach location are unreasonable and without basis.

120.   Based on the foregoing, plaintiff R Squared is entitled to declaratory judgment that Serendipity may disapprove of a proposed Additional Location only if there is a "conflicting third party use" at the proposed location; if R Squared is in "Material Breach" of the License Agreement; or, if R Squared has not complied with Section 6.2 of Schedule A-1 of the License Agreement.   R Squared is further entitled to a declaratory judgment that Serendipity's refusal to approve the 1102 Lincoln Road, South Beach location was unreasonable and in violation of Section 3.2 of the License Agreement.

**AS AND FOR A THIRD CAUSE OF ACTION**
**AGAINST DEFENDANT SERENDIPITY**
**(Breach of Contract)**

121.   Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraph 1 through 120 above as if fully set forth at length herein.

122.   Under the License Agreement, Serendipity does not have the right to withhold its consent to an Additional Location except if there is a "conflicting third party use" at the proposed location, or if R Squared is in "Material Breach" of the License Agreement, or if R Squared has not complied with Section 6.2 of Schedule A-1 of the License Agreement concerning R Squared's obligation to pay royalties to Serendipity.

2408494.1

123.    Serendipity contends that it has the right to withhold its consent to Additional Locations for additional reasons not set forth in Section 3.2 of the License Agreement, but concedes that such consent may not be unreasonably withheld or delayed.

124.    R Squared and its proposed Additional Location of Long Branch, New Jersey, satisfied all the requirements of Section 3.2 of the License Agreement.

125.    Under Section 2.5 of the License Agreement, Serendipity's consent to a sublicense "will not be unreasonably withheld to a qualified and legitimate third-party engaged in the food service industry provided that such third party is of good reputation and financial capability and provided that the assignee agrees to abide by all of the provisions of this Agreement and that R Squared agrees to be responsible for the obligations pursuant to the terms of this Agreement of the assignee."

126.    R Squared and its proposed sublicensing arrangement for the Long Branch, New Jersey with West Paces Hotel Group satisfied the requirements of Section 2.5 of the License Agreement.

127.    Serendipity had no valid basis under the License Agreement to withhold its consent to the Long Branch Additional Location.  Serendipity's refusal to consent to the Additional Location of Long Branch was unreasonable, improper and in breach of the License Agreement.

128.    Serendipity had no valid basis under the License Agreement to withhold its consent to the Long Branch sublicensing arrangement and its refusal to

2408494.1

consent to the Long Branch sublicense was unreasonable, improper and in breach of the License Agreement.

129.   As a direct result and consequence of Serendipity's breach of the License Agreement by withholding its consent to the Long Branch Additional Location and sublicense, R Squared has been damaged in an amount not less than $675,000.00.

## AS AND FOR A FOURTH CAUSE OF ACTION
## AGAINST DEFENDANT SERENDIPITY
### (Breach of Contract)

130.   Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraph 1 through 129 above as if fully set forth at length herein.

131.   Under the License Agreement, Serendipity does not have the right to withhold its consent to an Additional Location except if there is a "conflicting third party use" at the proposed location, or if R Squared is in "Material Breach" of the License Agreement, or if R Squared has not complied with Section 6.2 of Schedule A-1 of the License Agreement concerning R Squared's obligation to pay royalties to Serendipity.

132.   Alternatively, Serendipity has the right to withhold its consent to Additional Locations for additional reasons not set forth in Section 3.2, but such consent may not be unreasonably withheld or delayed.

133.   R Squared and its proposed Additional Location of South Beach, Miami Breach, Florida, satisfied all the requirements of Section 3.2 of the License Agreement.

29

134.    Under Section 2.5 of the License Agreement, Serendipity's consent to a sublicense "will not be unreasonably withheld to a qualified and legitimate third-party engaged in the food service industry provided that such third party is of good reputation and financial capability and provided that the assignee agrees to abide by all of the provisions of this Agreement and that R Squared agrees to be responsible for the obligations pursuant to the terms of this Agreement of the assignee."

135.    R Squared and its proposed sublicensing arrangement for the South Beach, Miami Beach, Florida with Tricia Johnson satisfied the requirements of Section 2.5 of the License Agreement.

136.    Serendipity had no valid basis under the License Agreement to withhold its consent to the South Beach Additional Location and its refusal to consent to the Additional Location was unreasonable, improper and in breach of the License Agreement.

137.    Serendipity had no valid basis under the License Agreement to withhold its consent to the South Beach sublicensing arrangement and its refusal to consent to the South Beach sublicense was unreasonable, improper and in breach of the License Agreement.

138.    As a direct result and consequence of Serendipity's breach of the License Agreement by withholding its consent to the South Beach Additional Location and sublicense, R Squared has been damaged in an amount not less than $15 million.

30

## AS AND FOR A FIFTH CAUSE OF ACTION
## AGAINST DEFENDANT SERENDIPITY
### (Breach of the Implied Covenant of Good Faith)

139.   Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraph 1 through 138 above as if fully set forth at length herein.

140.   Once it obtained R Squared initial payment under the License Agreement, and the assurance of future minimum royalties from R Squared, Serendipity determined that it would withhold the benefits of the License Agreement from R Squared and obstruct R Squared's ability to develop, open and operate new restaurants.

141.   Since 2009, Serendipity has in bad faith attempted to obstruct R Squared's efforts to develop, open and operate Additional Locations.

142.   As a result of these bad faith activities, Serendipity is attempting to wrongfully withhold the benefits of the contract from R Squared in bad faith.

143.   Serendipity's conduct breached the implied covenant of good faith in the License Agreement.

144.   Based on the foregoing, plaintiff has been damaged in an amount not less than $15.40 million.

## AS AND FOR THE SIXTH CAUSE OF ACTION
## AGAINST DEFENDANT SERENDIPITY
### (For Breach of Contract)

145.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraph 1 through 144 above as if fully set forth at length herein.

31

2408494.1

146.    The License Agreement is a binding and enforceable contract.

147.    Serendipity breached the License Agreement by terminating the Agreement contrary to the termination provisions set forth in Section 12 of the License Agreement.

148.    Serendipity's breach has caused R Squared damages for lost profits that R Squared would have earned for the remaining 15 years of the License Agreement at the restaurants currently opened by R Squared pursuant to the License Agreement, as well as additional restaurants that R Squared would have opened pursuant to the License Agreement in locations such as Long Branch, New Jersey, South Beach, Miami Beach, Florida, among others.

149.    Serendipity's wrongful termination has caused damages in an amount to be determined at trial, but not less than $50 million.

**WHEREFORE,** plaintiff R Squared respectfully demands judgment in its favor as follows:

(a)    on the First Cause of Action against defendant Serendipity for declaratory judgment a judgment declaring (1) that Serendipity's letter dated October 3, 2011 purportedly terminating the License Agreement and the related letter agreements is improper, unlawful, legally defective, null and void and (2) that Serendipity waived its right to argue, and is estopped from arguing that R Squared is in violation of Paragraphs 2.3, 10.2 and 10.6 of the License Agreement, (3) that R Squared is not in violation of Paragraphs 2.3, 10.2 and 10.6 of the License Agreement and (4) that Serendipity be enjoined and restrained from taking steps to terminate the License

32

Agreement and the related letter agreements;

      (b)    on the Second Cause of Action against defendant Serendipity for declaratory judgment that that Serendipity may disapprove of a proposed Additional Location if there is a "conflicting third party use" at the proposed location; if R Squared is in "Material Breach" of the License Agreement; or, if R Squared has not complied with Section 6.2 of Schedule A-1 of the License Agreement and that R Squared is further entitled to a declaratory judgment that Serendipity's refusal to approve the 1102 Lincoln Road, South Beach location was unreasonable and in violation of Section 3.2 of the License Agreement.

      (c)    Plaintiff R Squared is entitled under the License Agreement to open additional restaurant's without obtaining Serendipity's approval of the precise address of the new location;

      (d)    on the Third Cause of Action against defendant Serendipity for breach of contract for damages in an amount not less then $675,000.00;

      (e)    on the Fourth Cause of Action against defendant Serendipity for breach of contract for damages in an amount not less then $15 million;

      (f)    on the Fifth Cause of Action against defendant Serendipity for breach of implied covenant of good faith and fair dealing contract for damages in an amount not less then $15.675 million;

      (g)    on the Sixth Cause of Action against defendant Serendipity for breach of contract for damages in an amount not less than $50,000,000.00;

      (h)    awarding plaintiff attorneys' fees, costs and disbursements; and

      (i)    granting plaintiff such other and further relief as this Court deems

just, equitable and proper.

Dated:      East Meadow, New York
             October 11, 2011

                        CERTILMAN BALIN ADLER & HYMAN, LLP

                        By: _____
                              Paul B. Sweeney
                        Attorneys for Plaintiff
                        90 Merrick Avenue – 9th Floor
                        East Meadow, New York 11554
                        (516) 296-7000

2408494.1

FROM :                          FAX NO. : 12129839201          Aug. 10 2011 03:01PM P1

## VERIFICATION

STATE OF NEW YORK        )
                         )ss.:
COUNTY OF NASSAU         )

  **ROWEN SEIBEL**, being duly sworn, deposes and says:

  1. I am the plaintiff in the within action.

  2. I have read the foregoing VERIFIED COMPLAINT and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true. The sources of my information and grounds of my belief as to all matters in the foregoing Verified Complaint not stated upon my knowledge are as follows: records and documents maintained by Plaintiff.

                    ROWEN SEIBEL

Sworn to before me this
10ᵗʰ day of October, 2011

NOTARY PUBLIC

WILLIAM R. LEE III
Notary Public, State of New York
Qualified in Nassau County
Reg. No. 01LE6210034
My Commission Expires 08-10-2013